UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 06-10141-PBS |
| | ) | |
| OMARIO McCONNICO, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

December 21, 2006

Saris, U.S.D.J.

The Defendant, Omario McConnico, moves to suppress all evidence and information obtained as a result of a warrantless search of an automobile he was driving on February 18, 2006 in Dorchester, Massachusetts.  Defendant claims the evidence was seized in violation of his rights under the Fourth Amendment to the United States Constitution.  Boston Police Officers Robert Charbonnier and Richard Medina testified for the government. Rodney Mitchell testified for defendant.  After an evidentiary hearing, the Court **DENIES** the defendant's motion.

**FINDINGS OF FACT**

On February 18, 2006, at 1:00 a.m., Boston Police officers stopped an automobile that defendant McConnico was driving in Dorchester, Massachusetts.  The owner of the automobile, Mr. Wayne Barros, had given permission to the defendant to drive the vehicle.  There was also a passenger in the car named Mr. Rodney D. Mitchell, defendant's close friend.

The police officers were patrolling the neighborhood as part of "Operation Homesafe," a program designed to target gang activities in "hot" areas where many shootings had occurred.  The officers in the unmarked police cruiser were Robert Charbonnier, Richard Medina, and Edward Boylan.  They pulled over a white Honda with heavily tinted windows because it failed to stop at a red light at the intersection of Quincy Street and Columbia Road. By all accounts, it was a dangerous neighborhood.

Charbonnier went to the driver side window, and asked the driver to roll down the window.  A few seconds later, the driver rolled down the window a quarter of the way.  Charbonnier told him to roll it all the way down.  He explained to the defendant the reason for the stop, and asked for the license and registration.  The passenger was also asked for his license. Officer Medina went back to the unmarked cruiser with the documents to conduct a license check, while the other two officers remained at the car.  Defendant put his left hand in his crotch area on the seat, and Charbonnier told him to put it on the wheel.  He complied.

Shortly afterwards, fidgeting, defendant again placed his left hand below the Officer's line of view and used his right hand to fiddle with the radio.  Skittish because of the unsafe neighborhood, Charbonnier ordered Defendant out of the car in order to conduct a pat frisk for the officers' safety.  He used his flashlight to signal to Medina to return to the stopped car,

which he did.  The passenger was also told to get out by Officer
Medina.  It was at that point that Officer Charbonnier saw the
defendant make another nervous gesture towards his crotch area.

When the defendant was removed from the vehicle,
Charbonnier saw the butt of a gun protruding from the driver's
seat on the floor.  Both McConnico and Mitchell were handcuffed
and pat frisked, and the police found several bags of crack on
defendant.  Defendant accused Boylon of planting the crack.  Both
were transported to the police station at the direction of their
supervisor, Sgt. Dalrymple, who mistakenly was told that the
passenger also had drugs.  Mitchell, though, was released without
charges at the police station.

After booking, the police overheard defendant say on his
phone "Baby, I won't be home for your birthday, I never thought
they'd look under the seat."

The officers issued defendant a citation for running a
traffic light.

### DISCUSSION[1]

The police had probable cause to make a traffic stop.  <u>See</u>
<u>United States v. Coplin</u>, 463 F.3d 96, 102 (1st Cir. 2006)
(holding that any "objectively reasonable suspicion, even if
found to be based on an imperfect perception of a given state of

---

[1] At oral argument,  the government conceded that the
defendant had standing to challenge the search.

affairs" can justify a traffic stop); <u>see also</u> <u>United States v. Moorefield</u>, 111 F.3d 10, 12 (3d Cir. 1997) (citations omitted) ("It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations").  Here, the police witnessed the defendant's car run through a red light in violation of state traffic laws.  Therefore, the officers were justified in stopping the vehicle.

Once the car was stopped, the police had the right to order the driver and passenger out of the car pending the completion of the stop.  <u>Maryland v. Wilson</u>, 519 U.S. 408, 410 (1997) (establishing a bright line rule that allows police to order passengers from vehicle during valid stop); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109-10 (1977) (articulating rule that permits police to order driver from automobile during traffic stop).

Once these individuals had exited the vehicle, the police also had the right to pat frisk the driver for their safety given the nervous gestures that the defendant had been making towards his crotch area and the car seat, the time of night, and the dangerous neighborhood.  <u>Mimms</u>, 434 U.S. at 111 (citing <u>Terry v. Ohio</u>, 392 U.S. 1, 23 (1968)) (concluding that under "the facts available to the officer at the moment of the seizure or the search," a reasonable officer would conclude that a bulging jacket, combined with furtive gestures made a safety pat-down search appropriate).  Put another way, this Court finds that

under the totality of the circumstances, a pat frisk was
reasonable and permissible.

The police also had the right to look in areas within arm's
reach of the driver.  See Michigan v. Long, 463 U.S. 1032, 1049
(1983) ("the search of the passenger compartment of an
automobile, limited to those areas in which a weapon may be
placed or hidden, is permissible if the police officer possesses
a reasonable belief based on 'specific and articulable facts
which, taken together with the rational inferences from those
facts, reasonably warrant' the officers in believing that the
suspect is dangerous and the suspect may gain immediate control
of weapons").

Moreover, the butt of the gun found beneath the driver's
seat was in plain view of Officer Charbonnier.  See Harris v.
United States, 390 U.S. 234, 236 (1968) ("It has long been
settled that objects falling in the plain view of an officer who
has a right to be in the position to have that view are subject
to seizure and may be introduced in evidence"); see also United
States v. Jones, 187 F.3d 210, 219-21 (1st Cir. 1999) (finding
that a plain view seizure is valid where (1) the police officer
lawfully reached the position from which he could see the item in
plain view; (2) the seizure satisfied the probable cause
standard; and (3) the seizing officer had a lawful right of
access to the object itself.)

Thus, for the foregoing reasons, this Court finds that each
of the actions of the three officers present during the search of

5

the defendant was proper, and they did not violate McConnico's

Fourth Amendment rights.

## **ORDER**

The motion to suppress [Docket No. 15] is **DENIED**.


                                        **S/PATTI B. SARIS**
                                        United States District Judge